David J. Bodney (006065)
bodneyd@ballardspahr.com
Daniel A. Arellano (032304)
arellanod@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone:  602.798.5400
Facsimile:  602.798-5595
*Attorneys for Defendants
Gannett Co., Inc. and
Phoenix Newspapers, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Jeffrey Peterson, | Case No.: CV20-00106-PHX-MTL |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE** |
| Dennis K. Burke, et al., | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and LRCiv 12.1(c), Defendants Gannett Co., Inc. ("Gannett") and Phoenix Newspapers, Inc. ("PNI") – the only defendants remaining in this action (together, "Defendants") – move to dismiss Plaintiff's Second Amended Complaint ("SAC") with prejudice. This Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice (the "Motion") is supported by the following memorandum of law, and by the Declaration of Josh Susong filed contemporaneously with this Motion.

**Preliminary Statement**

This is a case in which Plaintiff Jeffrey Peterson, a well-known entrepreneur who founded one of the most successful internet startups of the 1990s dot-com era, alleges an elaborate *"Retaliatory Campaign"* orchestrated among political and business leaders in the United States and Mexico to destroy his reputation. (Doc. 13-1 at 6 ¶1.)  As against Gannett and PNI, he alleges defamation over two articles published in *The Arizona*

*Republic* and on azcentral.com in 2017. Because Plaintiff is a public figure suing over speech involving matters of public concern, he bears the twin burdens under the First Amendment of proving (a) falsity, and (b) by clear and convincing evidence, "actual malice" – that is, that they published with knowledge of falsity or in reckless disregard for the truth. *E.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986); *Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d 562, 573 (Ariz. 1986) (requiring proof of "*conscious* disregard" for the truth).

Plaintiff cannot satisfy his constitutional burden, nor can he overcome basic statutory defenses to liability. The first of these two articles falls outside the one-year statute of limitations for defamation. The second article is not actionable, because Plaintiff has not alleged that Gannett or PNI acted with the requisite actual malice in publishing the piece.

## Factual Background

### I.  Plaintiff Is a Prominent Public Figure.

As stated in the SAC, "Plaintiff is a well-known technology entrepreneur," who in the dot-come era of the late 1990s founded Quepasa.com, Inc., a social networking site that "became a national sensation" after a successful initial public offering and went on to reach peak market valuation of approximately $500 million. (Doc. 13-1 at 15 ¶17; *see also id.* at 9 ¶11 (describing Plaintiff as "a well-known technology entrepreneur who was the founder of the first social network to trade on a national stock exchange in the United States")). The SAC emphasizes Plaintiff's public prominence vis-à-vis that of the once-successful startup he founded:

> Quepasa maintains its place in history as one of the top bilingual English/Spanish internet brands, and as the first social network to trade publicly on a national stock exchange in the United States. The business was endorsed by and did business with national and international celebrities, including Grammy-award winning singer Gloria Estefan and actress Jennifer Lopez, who is the daughter of defendant David Lopez.

2

(*Id.* at 16 ¶18.)

Plaintiff alleges that, as a result the prominence he gained through Quepasa, he befriended then-Arizona Attorney General Janet Napolitano and "advocated for her state gubernatorial campaign in 2003." (*Id.* at 16 ¶¶21–23.) Likewise, when Napolitano won the election and became Governor, she appointed Plaintiff as a director of the Arizona-Mexico Commission. (*Id.*) Following his appointment to the Arizona-Mexico Commission, Plaintiff "interacted frequently" with Governor Napolitano and her close associates, as well as with senior members of the Arizona Democratic Party and the Democratic National Committee. (*Id.* at 17 ¶¶25–26.)

## II. The October 2017 Article.

PNI publishes *The Arizona Republic*, operates the website azcentral.com and is a subsidiary of Gannett. (Declaration of Josh Susong ("Susong Decl.") at 1 ¶3.)[1] On October 23, 2017, PNI published on azcentral.com a news report by reporter Craig Harris titled *State Orders Failed Internet Payday Loan Venture to Pay $250K to Defrauded Investors* (the "October 2017 Article").[2] The October 2017 Article reported on administrative proceedings before the Arizona Corporation Commission, which had ordered Plaintiff and two other principals of a failed payday-loan company, LoanGo, to repay elderly investors a combined $250,000 in restitution and to pay fines of $15,000 each. The report stated that Plaintiff "is a former Arizona-Mexico Commission member, major donor to Arizona Democratic candidates, and founder of Quepasa, a now-defunct Latino online social-media outlet."

---

[1] Plaintiff alleges "[u]pon information and belief" that Gannett publishes azcentral.com (Doc. 13-1 at 3.) In fact, Gannett does *not* publish azcentral.com or *The Arizona Republic*. (Susong Decl. at 1 ¶4).

[2] The same news report appeared in print in *The Arizona Republic* on October 24, 2017 under the headline *Online Firm Ordered to Repay Investors $250K*. (Susong Decl. at 1 ¶5.) Because the SAC incorporates the October 2017 Article by reference, it is attached to the Susong Declaration as an exhibit and may be considered by the Court in deciding this Motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that under the "incorporation by reference" doctrine, a district court may, in deciding a Rule 12(b)(6) motion, properly "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading," including newspaper articles that are central to a plaintiff's claim (internal quotation marks omitted)).

### III. The December 2017 Article.

On December 14, 2017, PNI published on azcentral.com a news report, also by reporter Craig Harris, titled *Once High-Flying Quepasa Chief Jeff Peterson Under Fire as $9M Gone in Online Startups* (the "December 2017 Article").[3] That piece reported on another tech startup Plaintiff founded, Mobile, and his raising of nearly $9 million in investments and his assembling of a blue-chip roster of investors, board members and advisors. The December 2017 Article reported on tensions between Plaintiff and Mobile board members, who questioned Plaintiff's management of the company and eventually obtained bank records demonstrating that least $2.3 million had been transferred from Mobile to Inter123, a company that Plaintiff controlled and would later put into Chapter 11 bankruptcy proceedings. While Inter123 had a licensing agreement to handle Mobile's internet domains, one Mobile board member, Marco Lopez, voiced concerns that "[t]here was never any mention of money," alleging that the transfers from Mobile to Inter123 occurred without the authorization of Mobile's board. Still, the December 2017 Article noted that a former attorney for Peterson provided a series of contracts, signed by representatives from both companies, that authorized payments from Mobile to Inter123.

The December 2017 Article concluded by noting that investors and some board members planned to provide company documents to regulators and law enforcement "in hopes of bringing additional investigations and forcing investors' repayment," and that Plaintiff had retained a criminal defense attorney.

### IV. Plaintiff Brings Suit in the District of Massachusetts.

Plaintiff initially brought this suit on December 14, 2018, in the District of Massachusetts, against over a dozen defendants, including former U.S. Attorney for the District of Arizona Dennis Burke (who at one point served on Mobile's board and who Plaintiff alleges led the "retaliatory campaign" against him), various other Arizona

---

[3] The same news report appeared in print in *The Arizona Republic* on December 27, 2017 under the headline *$9M Missing After Quepasa Founder's New Startup Fails*. It is likewise attached to the Susong Declaration as an exhibit incorporated by reference by the SAC. *Knievel*, 393 F.3d at 1076.

4

political leaders, the Democratic National Committee, Gannett and PNI. (Doc. 1.) Plaintiff amended his complaint on January 4, 2019 and again on May 27, 2019. (Doc. 6, 13.)

The District Court for the District of Massachusetts dismissed various individual defendants for lack of personal jurisdiction and transferred the remainder of the case to this District. (Doc. 50, 53.) This Court then dismissed the claims against the remaining individual defendants and the Democratic National Committee for lack of service, leaving only Gannett and PNI in the action.

## Argument

While the 47-page, 222-paragraph SAC raises numerous claims as against various defendants, it raises only a single defamation claim against Gannett and PNI, identifying only the October 2017 and December 2017 Articles as objectionable. Yet neither Article can give rise to liability. The October 2017 article was published more than a year before Plaintiff brought suit and is barred by Arizona's one-year statute of limitations for defamation actions. As to the allegedly defamatory statements in the December 2017 Article, Plaintiff does not allege – as he must under the First Amendment, despite having had numerous opportunities to do so – that Gannett or PNI acted with actual malice in publishing the statements. As a result, the SAC fails to state a claim upon which relief can be granted. It should be dismissed with prejudice because Plaintiff has now had three opportunities to state a claim against these Defendants and has failed to do so.

**I.    THE OCTOBER 2017 ARTICLE FALLS OUTSIDE THE STATUTE OF LIMITATIONS.**

   **A.    Arizona Law Governs.**

Arizona law governs Plaintiff's defamation claim, such that Arizona's statute of limitations applies. A federal court sitting in diversity applies the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Orr v. Bank of Am.*, 285 F.3d 764, 772 n.4 (9th Cir. 2002). Arizona courts follow the rules in the Restatement (Second) of Conflict of Laws. *Bryant v. Silverman*, 703 P.2d 1190, 1191

(Ariz. 1985). Section 149 of the Restatement provides:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Here, the publication occurred in Arizona, and as the District Court for the District of Massachusetts recognized: "the entirety of the alleged conduct occurred in Arizona, was performed by Arizona residents and involved an Arizona publication." (Doc. 50 at 15.) Though Plaintiff initially brought suit in Massachusetts, the court noted that any connection between Massachusetts and the issues in this case was "tenuous" at best and that "[c]andidly, the Court struggles to find any meaningful connection [with Massachusetts] and plaintiff offers none." (*Id.*) The court instead determined that there were "overwhelming connections to Arizona," and that "Arizona has a significant interest in resolving this tort action involving Arizona residents and an Arizona publication." (*Id.* at 15–16.)

Because the publication occurred in Arizona and no other state has a significant relationship to the issues, Arizona law governs (as informed, of course, by the First Amendment). Arizona's statute of limitations also applies because it would bar the action as to the October 2017 Article, as discussed below. *See* Restatement (Second) of Conflict of Laws § 142(1) ("The forum will apply its own statute of limitations barring the claim."); *Jackson v. Chandler*, 61 P.3d 17, 19 (Ariz. 2003) (explaining that, under Restatement § 142, "the general rule is very clear: as a starting point, the forum's statute of limitations applies," and that "[i]f a claim is barred in the forum it is rejected").

### B.      The October 2017 Article Falls Outside the Statute of Limitations.

Arizona's statute of limitations for defamation actions is one year and begins to run upon publication. A.R.S. § 12-541(1); *Boatman v. Samaritan Health Servs.*, 812 P.2d 1025, 1031 (Ariz. App. 1990). The SAC acknowledges that the October 2017 Article was published on October 23, 2017. (Doc. 13-1 at 32 ¶143.) This fact is incontestable.

6

(Susong Decl. at 1 ¶5.)  Yet Plaintiff did not bring his defamation suit until more than one year later, on December 14, 2018.  (Doc. 1).  The statements in the October 2017 Article are therefore nonactionable, as they occurred more than one year before Plaintiff brought suit.

## II. PLAINTIFF DOES NOT ALLEGE GANNETT OR PNI ACTED WITH ACTUAL MALICE IN PUBLISHING THE DECEMBER 2017 ARTICLE.

### A. Plaintiff Is a Public Figure and the Speech at Issue Involves Matters of Public Concern.

The SAC recognizes that Plaintiff is a "well known technology entrepreneur" who served as a director of the Arizona-Mexico Commission under then-Gov. Janet Napolitano.  (Doc. 13-1 at 9 ¶11, 15 ¶17 and 16 ¶¶21–23.)  By any measure, he is a "public figure," certainly with respect to his high-profile business dealings, within the well-settled meaning of Arizona and First Amendment law.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345–52 (1974); *Curtis Publ'g Co. v. Butts,* 388 U.S. 130, 155 (1967); *Dombey,* 724 P.3d at 569–71.

A public figure who seeks damages for allegedly defamatory statements involving matters of public concern bears the twin burdens of proving (i) the falsity of the statements at issue, and (ii) by clear and convincing evidence, that the statements were made with "actual malice" – that is, with knowledge of falsity or reckless disregard for the truth.  *E.g., Sullivan*, 376 U.S. at 279–80; *Hepps*, 475 U.S. at 777.

"[P]ublic figures for defamation purposes include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done."  *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016) (internal quotation marks omitted); *see also id.* (holding that a plaintiff was a public figure where her complaint stated that she was "the most downloaded woman on the Internet," and that her image had appeared in prominent national publications).  A person becomes a limited-purpose public figure as to a particular issue by "thrust[ing] [himself] to the forefront of particular public controversies in order to influence the resolution of

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

7

the issues involved." *Gertz*, 418 U.S. at 345. Limited public-figure status may also be reached by voluntarily participating in activity that invites attention and public scrutiny, or "close involvement with the resolution of matters of public concern." *Dombey*, 724 P.2d at 569.

As noted above, the SAC admits Plaintiff's public-figure status with respect to his business affairs and connections, stating twice that Plaintiff is "a well-known technology entrepreneur." (Doc. 13-1 at 9 ¶11, 15 ¶17.) He founded a company that "became a national sensation" and "maintains its place in history" as a top internet brand, and through which he forged connections with entertainment celebrities and business and political leaders in Arizona and nationally. (*Id.* at 15 ¶17, 9 ¶11, 16 ¶¶18, 16–17 ¶¶21–26.) Plaintiff boasts, for example, of Quepasa's endorsement by the "Grammy-award winning singer Gloria Estefan," (*id.* at 16 ¶18), and that he "had previously entered into one or more business transactions with a business owned by [defendant David Lopez's] daughter, well-known actress Jennifer Lopez." (*Id.* at 36 ¶162.) He served as a director of the prominent Arizona-Mexico Commission after befriending then-Governor Napolitano. (*Id.* at 16 ¶23.). And he maintained close relationships and business associations with other "significant political and business personalities in both the United States and Mexico," (*id.* at 12 ¶13(f)), including Burke (a former U.S. Attorney) and Lopez, Jr. (a former Nogales Mayor and gubernatorial aspirant), both of whom he recruited to Mobile's board and whose statements in the two Articles form the basis for this dispute.

Given his prominent business profile and the fact that he sought out advisors and board members for Mobile who were themselves publicly prominent in their own right, Plaintiff "could be expected to receive the scrutiny that eventually attends" such affairs, and he "cannot complain that the spotlight eventually turned on him; its unwelcome glare was a matter of time, not surprise." *Dombey*, 724 P.2d at 571. Indeed, courts rightly recognize that "[a] plaintiff's 'voluntary assumption' of a role in a public controversy may come as a result of his voluntary association with high officials." *Hourani v.*

8

*Psybersolutions LLC*, 164 F. Supp. 3d 128, 142 (D.D.C. 2016); *see also Clyburn v. New World Commc'ns*, 903 F.2d 29, 33 (D.C. Cir. 1990) ("One may hobnob with high officials without becoming a public figure, but one who does so runs the risk that personal tragedies that for less well-connected people would pass unnoticed may place him at the heart of a public controversy."). Plaintiff is unquestionably a public figure as to his business affairs within the well-settled contours of defamation law.

Moreover, the speech about which he complains deals with matters of public concern. As the U.S. Supreme Court has explained:

> Speech deals with matters of public concern when it can be fairly considered as relating to any mater of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011). The reports at issue discuss not only the business dealings of Plaintiff, they also involve certain government enforcement actions against Plaintiff for violating Arizona securities law and reports by former business associates that he may have acted unlawfully in other matters as well. As such, the articles unquestionably address matters of public concern. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecution . . . are without question events of legitimate concern to the public . . . .").

### B. Plaintiff Does Not Allege that Gannett or PNI Acted with Actual Malice.

With respect to the December 2017 Article, Plaintiff takes issue with statements by various former Mobile board members and investors regarding Plaintiff's questionable business activities, most notably that of Marco Lopez, who said that "[t]here was never any mention of money" passing from Mobile to Inter123 under the two companies' licensing agreement. (Doc. 13-1 at 34–36 ¶¶151–62.) Plaintiff maintains that *these individuals* knew their statements in the article were false, pointing largely to *their* involvement in Mobile's board, and to *their* close involvement with Plaintiff generally, as

9

a basis for having known the character of the company's business arrangements with which they later took issue. (*Id.*) He also complains that the December 2017 Article attempts to portray him as a criminal through its statement that investors and some board members of Mobile were referring materials to regulators and law enforcement "in hopes of bringing additional investigations" (*id.* at 36 ¶163), but he does *not* allege that this statement was false.

As a public figure, Plaintiff must plausibly allege that *Gannett* and *PNI* acted with actual malice in publishing the statements at issue. *See Sullivan*, 376 U.S. at 279–80; *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) ("[A] public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actual malice." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While Plaintiff alleges knowledge of falsity as to the *individuals* quoted in the December 2017 Article, (Doc. 13-1 at 35–36 ¶¶159–62), he nowhere alleges knowledge of falsity (or reckless disregard for the truth) as to *Gannett* or *PNI* for the statements contained in the report. That is, he nowhere alleges that Gannett or PNI published the allegedly false statements with knowledge of their falsity or in reckless disregard for the truth. Besides, the December 2017 Article reports that Peterson's former attorney provided documents indicating that the agreement between the two companies had, in fact, contemplated the transfer of money – thus including the very fact Plaintiff seems to suggest the individuals omitted in their statements.

Notably, alleging actual malice as to Gannett and PNI specifically is something Plaintiff knows how to do, having done so with respect to the October 2017 Article (which, for the reasons discussed above, is not actionable). (*Id.* at 33 ¶150 ("Defendants Phoenix Newspapers, and Gannett Co. Inc., *knew* the statement characterized above-- that Plaintiff, 'is a … founder of Quepasa, a now-defunct Latino online social-media outlet' was not true because, among other reasons, the *Arizona Republic* itself had previously published numerous articles about Quepasa, including articles that followed Quepasa

through its lengthy corporate history.") (emphasis added)).  That he chose *not* to allege that Gannett and PNI published the December 2017 Article with actual malice indicates the omission was deliberate.

Because Plaintiff is a public figure and has failed to allege that Gannett or PNI published the December 2017 Article with actual malice, and because he lacks any basis in fact to allege constitutional actual malice in yet another amended pleading, his suit is barred by the First Amendment under *Sullivan* and its progeny.

## III. THE COURT SHOULD DISMISS THE SAC WITH PREJUDICE.

The SAC – Plaintiff's now-third iteration of his allegations against these Defendants – fails to state a claim upon which relief can be granted.  The SAC should be dismissed with prejudice because Plaintiff has already been allowed to amend his allegations twice.  *Nevius v. Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (internal quotation marks omitted)).  The first two iterations of his complaint forced the defendants – the overwhelming majority of whom are based in Arizona – to defend in the District of Massachusetts, despite none of them having any connections to that state and Plaintiff's residency in Ontario, Canada.  Indeed, Plaintiff considers himself a resident of Massachusetts only "for tax purposes."  (Doc. 13-1 at 1–2.)  Having had a third opportunity to fix his allegations and squandered it, Plaintiff's case must now end for good.

## IV. THIS MOTION FACILITATES EARLY RESOLUTION OF THE CASE.

Gannett and PNI previously moved to dismiss the SAC for improper venue under Rule 12(b)(3) when the case was pending in the District of Massachusetts. (Doc. 33, 34.) While that motion did not argue that Plaintiff had failed to state a claim upon which relief can be granted under Rule 12(b)(6), the defense is not waived.  *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir. 2017) ("A defendant who omits a defense under Rule 12(b)(6) – failure to state a claim upon which relief can be granted – does not waive that defense.").  Rather, the defense may be raised in a responsive pleading, a

11

motion for judgment on the pleadings under Rule 12(c) or at trial.  Fed. R. Civ. P. 12(h)(2).

The Ninth Circuit also allows district courts to consider the defense in a successive, pre-answer 12(b)(6) motion to dismiss where the motion is not brought for an improper purpose and would facilitate early resolution of the case.  *Apple iPhone Antitrust Litig.*, 846 F.3d at 319–20.  Indeed, limiting a defendant to the three avenues listed Rule 12(h)(2) can result in unnecessary delay where, for example, a case-dispositive defense can be addressed in a pre-answer 12(b)(6) motion rather than waiting for a post-answer 12(c) motion addressing the same issue.  *See id.* at 318.

This Motion is not being filed for delay or for any strategically abusive process, and deciding the issues now will prevent the Court from having to wait for the same issues to be presented later in a Rule 12(c) motion for judgment on the pleadings.  Indeed, this approach is considerably more efficient than requiring Defendants to answer a 47-page, 222-paragraph Second Amended Complaint and then file a substantive motion to resolve such stale and ill-considered claims.  It is appropriate for the Court to address these case-dispositive First Amendment defenses and dismiss this action promptly.  *See, e.g., Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) ("When the complaint implicates the fundamental value of freedom of the press, there is good reason for a court to examine the complaint with a more rigorous eye in order not to burden public debate with insupportable litigation." (internal quotation marks omitted)).

## Conclusion

For the foregoing reasons the Court should grant the Motion to Dismiss with prejudice.

DATED this 21st day of February, 2020.

BALLARD SPAHR LLP

By: */s/ Daniel A. Arellano*
David J. Bodney
Daniel A. Arellano
1 East Washington Street, Suite 2300
Phoenix, AZ 85004

*Attorneys for Defendants Gannett Co., Inc. and Phoenix Newspapers, Inc.*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**LRCiv 12.1(c) Certification**

Pursuant to LRCiv 12.1(c), Defendants Gannett Co., Inc. and Phoenix Newspapers, Inc. ("Movants") hereby certify, by their undersigned counsel, that before filing this Motion to Dismiss, Movants notified counsel for Plaintiff of the issues asserted in the Motion, and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the Plaintiff.

DATED this 21st day of February, 2020.

BALLARD SPAHR LLP

By: */s/ Daniel A. Arellano*
David J. Bodney
Daniel A. Arellano
1 East Washington Street, Suite 2300
Phoenix, AZ 85004

*Attorneys for Defendants Gannett Co., Inc. and Phoenix Newspapers, Inc.*

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the attached document to the clerk's office using the CM/ECF system for filing and transmittal of a notice of electronic filing to the following CM/ECF registrants, and mailed a copy of same to the following, if a non-registrant, this 21st day of February, 2020:

Mark Ellis O'Brien
17D Fernwood Drive
Leominster, Massachusetts 01453
justice457@gmail.com
*Attorney for Plaintiff*

/s/ Vicki L. Morgan

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400