**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Peterson, | No. CV-20-00106-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Gannett Company Incorporated, et al., | |
| Defendants. | |

Before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice filed by Defendants Gannett Co., Inc. ("Gannett") and Phoenix Newspapers, Inc. ("PNI"). (Doc. 61.) Gannett and PNI, the two remaining defendants in this case, move to dismiss Plaintiff Jeffrey Peterson's defamation claim regarding two articles published in *The Arizona Republic* and on azcentral.com in 2017. They argue that the one-year statute of limitations has expired as to the first article, and that Plaintiff, as a public figure, has not adequately alleged actual malice as to the second. The motion is granted; Plaintiff will be given partial leave to amend.

## I.     BACKGROUND

### A.     Parties

Plaintiff Jeffrey Peterson is a self-described "well-known technology entrepreneur" and the founder and CEO of "the first online community for Hispanics, Quepasa.com, Inc." (Doc. 13-1 ¶ 17.) Founded in the late 1990s, Quepasa.com "maintains its place in history as one of the top bilingual English/Spanish internet brands, and as the first social network

to trade publicly on a national stock exchange in the United States." (*Id.* at ¶ 18.) The website "became a national sensation" after a successful initial public offering and reached peak market valuation of approximately $500 million. (*Id.* at ¶ 17). It was also "endorsed by and did business with national and international celebrities, including Grammy-award winning singer Gloria Estefan and actress Jennifer Lopez, who is the daughter of defendant David Lopez." (*Id.*)

Plaintiff claims that he gained various connections, political and otherwise, as the founder of Quepasa.com. He befriended then-Arizona Attorney General Janet Napolitano and "advocated for" her 2002 gubernatorial campaign. (*Id.* ¶¶ 21–23.) Following her election, Governor Napolitano appointed Plaintiff as a director of the Arizona-Mexico Commission. (*Id.*) Plaintiff "interacted frequently" with Governor Napolitano and her associates in the coming years, including senior members of the Arizona Democratic Party and the Democratic National Committee. (*Id.* ¶¶ 25–26.) He also maintained relationships with other "significant political and business personalities in both the United States and Mexico," (*id.* ¶13(f)), including Dennis Burke, former U.S. Attorney for the District of Arizona, and Marco Lopez Jr., former mayor of Nogales, Arizona. (*Id.*)

Gannett and PNI are the only remaining defendants in this case (collectively, "Defendants"). Gannett is a media and marketing company and the largest newspaper company in the United States. (Doc. 61 at 3.) PNI is a subsidiary of Gannett and publishes *The Arizona Republic* newspaper and operates the website azcentral.com. (*Id.*)

**B.    Alleged "Retaliatory Campaign"**

Plaintiff claims that after their "long-standing professional relationship and friendship deteriorated," Burke led a group of Plaintiff's former associates in a "lengthy, ongoing tortious campaign" to "silence and harm" him. (*Id.* ¶¶ 9-10.) Plaintiff states that he has "significant personal knowledge" about Burke and his colleagues. He claims that they sought to prohibit Plaintiff from sharing information about their allegedly improper conduct, including certain political, business, and personal relationships with Mexican officials. (*Id.* ¶ 9.)

As part of the alleged campaign against Plaintiff, "one or more false and defamatory news articles" were published in *The Arizona Republic* and on azcentral.com.[1] (*Id.* ¶ 12.) First, on October 23, 2017, PNI published an article by reporter Craig Harris on azcentral.com titled "State Orders Failed Internet Payday Loan Venture to Pay $250K to Defrauded Investors" (the "October 2017 Article").[2] (Doc. 13-1 ¶¶ 143-144; Doc. 62-1.) It describes the Arizona Corporation Commission's order that Plaintiff and his two co-owners of LoanGo, "a failed Chandler-based internet payday-loan company," pay $250,000 in restitution to five "defrauded" investors. (Doc. 62-1 at 2.) Plaintiff was also ordered to pay a $15,000 fine. The article describes Plaintiff as "a former Arizona-Mexico Commission member, major donor to Arizona Democratic candidates, and founder of Quepasa, a now-defunct Latino online social-media outlet." (*Id.*)

Second, on December 14, 2017, PNI published an article on azcentral.com, also by Mr. Harris, titled "Once-High-Flying Quepasa Chief Jeff Peterson Under Fire as $9M Gone in Online Startups" (the "December 2017 Article").[3] (Doc. 13-1 ¶¶ 151-152; Doc. 62-3.) The article describes Plaintiff's fundraising efforts for Mobile, another internet startup he founded. It states that Mobile raised at least $8.6 million between 2013 and 2016 from various investors. (Doc. 62-3 at 2-3.) Plaintiff also recruited board members including Lopez Jr. and Burke. Mobile's advisers and consultants "included Democratic National Committee chairman and presidential candidate Howard Dean; ex-Phoenix May Phil

---

[1] The two articles at issue were not attached to the Second Amended Complaint, but were attached to a declaration to the Motion to Dismiss. (Doc. 62.) Generally, if "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). An exception exists for documents whose "authenticity ... is not contested" and on which "the plaintiff's complaint necessarily relies." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The Court may therefore consider the articles without converting the motion to one for summary judgment.

[2] The same article appeared in print in *The Arizona Republic* on October 24, 2017 with the headline "Online Firm Ordered to Repay Investors $250K." (Doc. 61 at 3; Doc. 62-2.)

[3] The same article appeared in print in *The Arizona Republic* on December 27, 2017 with the headline "$9M Missing After Quepasa Founder's New Startup Fails." (Doc. 61 at 4; Doc. 62-4.)

Gordon; Mexican-American Grammy winner Pepe Aguilar; and Hollywood movie-maker Howard 'Hawk' Koch." (*Id.* at 3.)

The article reported that at the time of publication, "all the money is gone." (*Id.*) It describes former investors' concerns with Plaintiff's management of Mobile and reviewed the company's bank records. The article also states that Peterson developed an idea for "a new Quepasa" in 2014, which ultimately became financially "intertwined" with Mobile. (*Id.* at 7.) It states that investors and board members planned to turn over internal documents to law enforcement, the IRS, and others "in hopes of bringing additional investigations and forcing investors' repayment." (*Id.* at 8.) The December 2017 Article states that Plaintiff "made his name in the Valley," "had a track record of getting big names to back him," and "became a major donor to Democrats." (*Id.* at 9.)

### C.    Procedural History

Plaintiff filed the original Complaint *pro se* in the United States District Court for the District of Massachusetts on December 14, 2018. (Doc. 1.) He then filed the First Amended Complaint after retaining counsel on January 4, 2019 (Doc. 6), and the Second Amended Complaint on May 27, 2019. (Doc. 13-1.) The Second Amended Complaint asserted claims for defamation, intentional infliction of emotional distress, tortious interference with contract, civil conspiracy, and criminal harassment against a dozen defendants, including Burke, Lopez Jr., the Democratic National Committee, Gannett, and PNI, among others. On January 10, 2020, the District of Massachusetts granted Gannett's and PNI's motion to transfer the case to this district pursuant to 28 U.S.C. § 1404(a).[4] (Doc. 53.) Ten defendants have been dismissed from the case to date.[5] Only Gannett and PHI

---

[4] Gannett and PNI did not waive their ability to file a Rule 12(b)(6) motion by first filing a motion to transfer under Rule 12(b)(3). A defendant must raise improper venue under Rule 12(b)(3) in its first Rule 12 motion; otherwise, the defense is waived. *See* Fed. R. Civ. P. 12(g)(2)-(h)(1)(a). However, "a defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense." *In re Apple iPhone Antitrust Litig*., 846 F.3d 313, 317–18 (9th Cir. 2017), aff'd sub nom. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 203 L. Ed. 2d 802 (2019).

[5] On January 10, 2020, the District of Massachusetts dismissed Defendants Dennis K. Burke, Marco A. Lopez Jr., Victor Flores, the Honorable Lisa Flores, and Mario Diaz for

1    remain. The sole claim against them is for defamation. (Doc. 13-1 ¶¶ 200-204.)

2        Defendants filed the pending motion on February 21, 2020. (Doc. 61.) It argues,

3    first, that the October 2017 article falls outside of the one-year statute of limitations for

4    defamation claims. Second, Defendants argue that Plaintiff has failed to meet his

5    constitutional burden as a limited-purpose public figure to allege "actual malice" with

6    respect to the December 2017 Article. Plaintiff filed a response on March 6, 2020. (Doc.

7    63). Defendants filed a reply on March 13, 2020 (Doc. 65).

8    **II.    LEGAL STANDARD**

9        To survive a motion to dismiss, a complaint must contain "a short and plain

10   statement of the claim showing that the pleader is entitled to relief" such that the defendant

11   is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl.*

12   *Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v.*

13   *Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack

14   of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

15   legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A

16   complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can

17   prove no set of facts in support of the claim that would entitle it to relief." *Williamson v.*

18   *Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

19       The Court must accept material allegations in the Complaint as true and construe

20   them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*,

21   720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint

22   have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee*, 250

23   F.3d at 688. Review of a Rule 12(b)(6) motion is "limited to the content of the complaint."

24   *North Star Int'l*, 720 F.2d at 581.

25

26   lack of personal jurisdiction. (Doc. 50 at 18; Doc. 53.) Following the transfer, this Court
     dismissed Defendants Luis Borbon Holguin, Craig Harris, Suzanne Barr, David Lopez, and
27   the Democratic National Committee without prejudice pursuant to Fed. R. Civ. P. 4(m) for
     lack of service on January 17, 2020. (Doc. 57.) It also dismissed fictitious defendants Jane
28   Doe Diaz, White Entities 1-10, John & Jane Does 1-10, and Black Corporations 1-10. (*Id.*)

1     **III.**     **ANALYSIS**

2         **A.**     **Time-Barred**

3          Defendants first argue that Arizona's one-year statute of limitations for defamation

4 claims has expired as to the October 2017 Article. Plaintiff argues that Massachusetts's

5 three-year statute of limitations should apply because venue transfer is not "intended as a

6 weapon of dismissal in the Defendant[s'] arsenal." (Doc. 63 at 4.) The Court agrees with

7 Defendants.

8                  **1.**     **Choice of Law**

9          Federal courts sitting in diversity generally apply the forum state's choice of law

10 rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Orr v. Bank of Am.*,

11 285 F.3d 764, 772 n.4 (9th Cir. 2002). But when a case is transferred pursuant to

12 28 U.S.C. § 1404(a), as this case was, typically "the transferee court must follow the

13 choice-of-law rules of the transferor court." *Muldoon v. Tropitone Furniture Co.*, 1 F.3d

14 964, 965 (9th Cit. 1993) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). This rule

15 "does not apply," however, "when a case is transferred because venue was improper in the

16 transferor court, or because personal jurisdiction was lacking there; in those cases the

17 transferee court applies the default *Klaxon* rule for choice of law." *Hanson Crawford Crum*

18 *Family Law Grp., LLP v. Randall*, No. 18-CV-03371-VC, 2019 WL 6699802, at *6 (N.D.

19 Cal. Dec. 9, 2019) (citing *Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir.

20 1983)). Further, in cases transferred under § 1404(a), the transferor court's

21 "characterization of the transfer is not controlling." *Muldoon*, 1 F.3d at 967. The transferee

22 court must determine whether the lawsuit was properly filed in the transferor court, and

23 whether the plaintiff is consequently entitled to that court's choice of law rules. *Id.*

24          Here, the District Court for the District of Massachusetts transferred the case to the

25 District of Arizona because "public and private interest factors weigh strongly in favor" of

26 the transfer.[6] (Doc. 50 at 16.) The court noted that "plaintiff's choice of forum is the only

27

28     [6] In the transfer order, the District Court for the District of Massachusetts specifically "decline[d] to engage in an extended choice-of-law analysis." (Doc. 50 at 16.)

factor that weighs against transfer to the District of Arizona"; that "plaintiff fails to proffer any reason why Massachusetts is a more convenient forum than Arizona"; that the "entirety of the alleged conduct occurred in Arizona"; and that the "tenuous connection" between the litigation and Massachusetts "further supports transfer." (*Id.* at 14-15.) Based on the transfer order and this Court's independent review of the record, this case was not properly filed in the District of Massachusetts. The Court will apply Arizona choice of law rules.

Arizona courts apply the rules set forth in the Restatement (Second) of Conflict of Laws (1971) ("Restatement"). *See Bryant v. Silverman*, 703 P.2d 1190, 1191 (Ariz. 1985). The Restatement states that the "local law of the forum determines … whether an action is barred by the statute of limitations. This law also determines all matters involving the application of the statute of limitations." Restatement § 142(a). Accordingly, the Court will apply Arizona's statute of limitations.

## 2.      Arizona Statute of Limitations

Arizona's statute of limitations for defamation claims is one year. *See* A.R.S. § 12-541(1). It begins to run, and the defamation action accrues, upon publication of the defamatory statement. *See Lim v. Superior Court In and For Pima City*, 126 Ariz. 481, 482 (Ariz. Ct. App. 1980). The October 2017 Article was published on October 23, 2017. (Doc. 13-1 at 143.) Plaintiff filed the original complaint more than one year later, on December 14, 2018. (Doc. 1.) Plaintiff's defamation claim with respect to the October 2017 Article is therefore time-barred.

In response, Plaintiff argues that "transfer isn't intended as a weapon of dismissal in the Defendant[s'] arsenal." (Doc. 63 at 4.) He claims that the Court should instead apply Massachusetts's three-year statute of limitations for defamation claims.[7] In support of this argument, Plaintiff states that the "interest of justice does not allow the preclusion of an action because it *becomes* time-barred in the transferee forum." (*Id.* at 5.) The one case

---

[7] "The statute of limitations for a defamation claim is three years, Mass Gen Laws. Ch. 260, § 4, and the 'general rule is that the accrual period begins upon publication of the defamatory statement.'" *McLaughlin v. Bos. Ret. Bd.*, 146 F. Supp. 3d 283, 290 (D. Mass. 2015) (citation omitted).

1    Plaintiff cites in support of this position, however, is inapposite.

2         In *Burnett v. New York Cent. R.R. Co.,* 380 U.S. 424 (1965), the petitioner first sued

3    in Ohio state court within the statute of limitations period. The action was dismissed for

4    improper venue. *Id*. at 425. After dismissal, the petitioner filed an identical action in the

5    federal District Court for the Southern District of Ohio. The district court dismissed

6    because although the state court lawsuit was timely, the statute of limitations expired before

7    the federal case was filed. *Id*. The U.S. Supreme Court ultimately reversed, holding that

8    "petitioner's state court action tolled the federal limitation provision and therefore

9    petitioner's federal court action here was timely." *Id*. at 426. In so ruling, the Court noted

10   "the unfairness of barring a plaintiff's action solely because a prior timely action is

11   dismissed for improper venue after the applicable statute of limitations has run." *Id*. at 430.

12        *Burnett* is distinguishable from the present case for multiple reasons. For one, this

13   case has never been dismissed. *Burnett* also involved a matter that was initially filed in

14   state court and subsequently re-filed in federal court. *Id*. at 425. Further, the *Burnett* case

15   involved only one applicable limitations period, whereas the issue at hand is whether one

16   of two possible statutes of limitations—Arizona's or Massachusetts's—applies. That case

17   also involved the tolling of a statute of limitations, which no party argues should apply

18   here. *Id*. at 426. *Burnett* does not support Plaintiff's argument that the Massachusetts statute

19   of limitations should apply to this case.

20        Transfer of venue was not used as a "weapon" against Plaintiff. (Doc. 63 at 4.)

21   Rather, for the numerous reasons described by the District Court for the District of

22   Massachusetts, venue is proper in this district. This Court applies Arizona's one-year

23   statute of limitations, which expired as to the October 2017 Article before Plaintiff filed

24   his original Complaint.

25        **B.    Defamation**

26        Defendants next argue that Plaintiff's defamation claim as to the December 2017

27   Article fails as a matter of law. (Doc 61 at 7.) A defamation claim generally requires a false

28   publication that brings "the defamed person into disrepute, contempt, or ridicule, or must

impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989). When the plaintiff is a "public figure," the burden is heightened. To prevail on a defamation claim, a public figure plaintiff must also prove (i) the falsity of the statements and issue and (ii) by clear and convincing evidence, that the statements were made with "actual malice"; that is, with knowledge of falsity or reckless disregard for the truth.[8] *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). Defendants argue that the Second Amended Complaint demonstrates that Plaintiff is a public figure but that he failed to adequately allege that Defendants acted with actual malice.

### 1.      Public Figure

The Court first addresses whether Plaintiff is a "public figure." This concept extends beyond government officials and other policy makers. Public figures include "artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done." *Cepeda v. Cowles Magazines &Broad., Inc*., 392 F.2d 417, 419 (9th Cir. 1968). The U.S. Supreme Court has identified two types of public figures: (1) all-purpose public figures, who occupy "positions of such persuasive power and influence that they are deemed public figures for all purposes," and (2) limited-purpose public figures, who "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345. Because "[i]n either case such persons assume special prominence in the resolution of public questions," both categories face a heightened burden. *Id*. at 351.

The Court does not find that Plaintiff is an all-purpose public figure. Defendants do

---

[8] Through a series of landmark cases, the U.S. Supreme Court "has federalized major aspects of libel law." *Gertz*, 418 U.S. at 370 (White, J. dissenting). While defamation clams are brought under state law, no state may impose liability for a defamatory statement regarding a "public official" or "public figure" unless the plaintiff proves that it was made with knowing falsehood or reckless disregard of the truth. *New York Times Co.*, 376 U.S. at 279-80 (public official); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 154-55 (public figure).

1   not argue as much (Doc. 65 at 5), and all-purpose public figures generally require "clear
2   evidence of general fame or notoriety in the community, and pervasive involvement in the
3   affairs of society" *Id*. at 352. The Second Amended Complaint does not indicate that
4   Plaintiff is generally famous or that he wields vast influence in public affairs. (Doc. 13-1.)

5        The relevant inquiry is whether Plaintiff is a limited-purpose public figure. In
6   determining whether a defamation plaintiff is a limited-purpose public figure, courts look
7   to "whether (i) a public controversy existed when the statements were made, (ii) whether
8   the alleged defamation is related to the plaintiff's participation in the controversy, and (iii)
9   whether the plaintiff voluntarily injected itself into the controversy for the purpose of
10  influencing the controversy's ultimate resolution." *Makaeff v. Trump Univ.*, LLC, 715 F.3d
11  254, 266 (9th Cir. 2013). Limited-purpose public figures exist "[m]ore commonly" than
12  all-purpose public figures. *Gertz*, 418 U.S. at 351.

13       Defendants argue that, according to the Second Amended Complaint, Plaintiff is a
14  limited-purpose public figure "with respect to his high-profile business dealings." (Doc. 61
15  at 7.) The Court agrees. Plaintiff states that he is a "well-known technology entrepreneur"
16  who founded the social networking site Quepasa.com, Inc. (Doc. 13-1 ¶ 11). As described
17  above, Quepasa.com's status as a "national sensation" (*id*. ¶ 17) permitted Plaintiff to forge
18  relationships with "significant political and business personalities in both the United States
19  and Mexico." (*Id*. ¶13(f).) Plaintiff was appointed as a director of the Arizona-Mexico
20  Commission as a result of these connections. (*Id*. ¶¶ 21–23.) He also maintained
21  relationships with former U.S. Attorney Burke and former Nogales Mayor Lopez, Jr.—
22  both of whom Plaintiff recruited to the board of Mobile, another company he founded.
23  Plaintiff states that Defendants engaged in a "retaliatory campaign" to "permanently
24  damage" his "reputation and credibility," including through the two articles at issue.
25  (*Id*. ¶ 11-12.) It also alleges that Burke "reported facts he knew were false[] to the Arizona
26  Corporation Commission," which "caused at least one investigation of the Plaintiff, the
27  Plaintiff's business colleagues and business interests." (*Id*. ¶ 14(a).)

28       These allegations, taken together, indicate that a "public controversy existed when

1    the statements were made"—that is, the allegations and investigations regarding Plaintiff's

2    business practices. *Makaeff*, 715 F.3d at 266. The Second Amended Complaint also clearly

3    demonstrates that the "alleged defamation is related to the plaintiff's participation in the

4    controversy," and that Plaintiff "voluntarily injected" himself into the controversy. *Id.* The

5    Second Amended Complaint describes, in detail, Plaintiff's efforts to engage in high-

6    profile business dealings and to court prominent connections, political and otherwise, to

7    promote himself and his businesses. (Doc. 13-1 at 15-18.) The Court finds, based on

8    Plaintiff's own allegations, that he is a limited-purpose public figure.

9          Plaintiff argues that he is not a public figure because "in family conversations

10   around American kitchen tables or while the news is being watched, it's likely no one

11   would know who Jeffrey Peterson is or was." (Doc. 63 at 1.) That level of fame is not

12   required to become a limited-purpose public figure. As noted, although in "some instances"

13   a person achieves "such pervasive fame or notoriety" to become an all-purpose public

14   figure, it is "more common[]" that an individual become a public figure "for a limited range

15   of issues." *Gertz*, 418 U.S. at 351; *see also Harris v. Tomczak*, 94 F.R.D. 687, 702 (E.D.

16   Cal. 1982) (holding that "nationwide fame is not required" to qualify as a public figure).

17   Plaintiff also argues that "[p]ast successes don't make the Plaintiff a prominent figure like

18   President Trump of Mark Zuckerberg of *Facebook* fame." (*Id.* at 2.)   However, once

19   attained, an individual does not lose public figure status. *See Partington v. Bugliosi*, 56

20   F.3d 1147, 1152 n.8 (9th Cir. 1995) ("[E]very court of appeals that has specifically decided

21   this question has concluded that the passage of time does not alter an individual's status as

22   a limited purpose public figure.").

23         In reaching this conclusion, the Court notes that numerous other courts have found

24   limited-purpose public figures at the motion to dismiss stage. *See, e.g., Resolute Forest

25   Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017) ("[Plaintiff's]

26   own allegations about their world-wide reach and influence, as well as the public nature of

27   its work in forestry and sustainability, show that the company is a limited public figure for

28   purposes of its participation in the forestry industry…"); *Heller v. NBCUniversal, Inc.*, No.

CV-15-09631-MWF-KS, 2016 WL 6573985, at *5 (C.D. Cal. Mar. 30, 2016) (finding a limited-purpose public figure where "Plaintiff's own allegations show that his relationship with N.W.A. was the subject of great public interest that prompted him to write a book recounting his side of the story."); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015) ("Where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage."). Pursuant to his own allegations, Plaintiff is a limited-purpose public figure.

### 2. Actual Malice

The next issue is whether Plaintiff has adequately alleged that Defendants acted with actual malice. As noted, to satisfy First Amendment concerns, a public figure plaintiff must prove by clear and convincing evidence that the defendant made a defamatory statement with actual malice—that is, "knowledge that it was false or with reckless disregard of whether it was false or not." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) (citing *New York Times Co.*, 376 U.S. 254). Actual malice is "not measured by whether a reasonably prudent man would have published or would have investigated before publishing," but by whether "the defendant in fact entertained serious doubts as to the truth of [its] publication." *St. Amant v. Thompson*, 390 U. S. 727, 731 (1968). The existence of actual malice is a question of law. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990).

The Court finds that Plaintiff has not adequately alleged that Defendants acted with actual malice. Plaintiff apparently concedes this point. With respect to actual malice, his response to Defendants' motion states only, "the Plaintiff is not a prominent public figure, and lacking that nomenclature, the Plaintiff is under no burden to prove actual malice, although he's prepared to do so." (Doc. 63 at 4.).

Plaintiff has also not alleged actual malice under guiding case law. The Ninth Circuit previously held that a plaintiff need only allege "the required state of mind generally" because "the issue of actual malice ... cannot be properly disposed of by a motion to dismiss, where the plaintiff has had no opportunity to present evidence in support

of his allegations." *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (citation and quotations marks omitted). The Supreme Court's subsequent *Iqbal* decision contradicted *Flowers*, however, in holding that actual malice is subject to a heightened pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[m]alice, intent, knowledge, and other conditions of a person's mind" must be pled under the "strictures of Rule 8"). While the Ninth Circuit has not specifically addressed whether *Flowers* remains good law, "the circuits that have considered the question have uniformly held that a claim may be dismissed for failing plausibly to allege actual malice without permitting discovery." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1027-28; see also *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.").

This Court will, "consistent with the overwhelming weight of post-*Iqbal* authority," address whether Plaintiff has plausibly alleged that Defendants acted with actual malice at the pleading stage. *Miller v. Watson*, No. 3:18-CV-00562-SB, 2019 WL 1871011, at *6 (D. Or. Feb. 12, 2019), report and recommendation adopted, No. 3:18-CV-00562-SB, 2019 WL 1867922 (D. Or. Apr. 25, 2019); *see also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2019 WL 281370, at *8 (N.D. Cal. Jan. 22, 2019) ("it is proper to dismiss a complaint when the Court concludes the plaintiff fails to plead actual malice as a matter of law" under the Rule 12(b)(6) standard); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1238-40 (N.D. Cal. 2014) (dismissing defamation claim under Rule 12(b)(6) for failure to allege actual malice).

The Second Amended Complaint contains two relevant allegations. First, it describes the two articles as "intentionally orchestrated by Burke as the group leader, and published by the *Arizona Republic* newspaper and on the azcentral.com website with ill-will and knowledge of falsehood. The Complaint seeks redress for these statements which were made with actual malice." (Doc. 13-1 ¶ 12) (emphasis omitted). Second, "[w]hen

[d]efamatory statements were made regarding Peterson, Defendants acted with actual malice." (*Id*. ¶ 203.) The second statement notably applied to all twelve of the defendants in the case at that time. Plaintiff also alleges that various individuals quoted in the article "knew the statements [they] made in the article were false." (*Id*. ¶¶ 159-162.) At no point, however, does Plaintiff allege "factual content that allows the court to draw the reasonable inference" that Gannett or PNI acted with actual malice regarding the December 2017 Article.[9] *Iqbal*, 556 U.S. at 678.

Construed in the light most favorable to Plaintiff, the Second Amended Complaint's conclusory allegations are insufficient. *See id.*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A public figure defamation plaintiff "must point to details sufficient to render a claim plausible." *Resolute Forest Prod.*, 302 F. Supp. 3d at 1018 (citing *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2017). Plaintiff's "formulaic recitations" that Defendants acted with "ill-will and knowledge of falsehood" (Doc. 13-1 ¶ 12) and with "actual malice" (*id*. ¶ 203) fall short. *Resolute Forest Prod., Inc.*, 302 F. Supp. 3d at 1019 (citing *Twombly*, 550 U.S. at 555). Plaintiff has not made "any specific allegations that would support a finding that [Defendants] harbored serious subjective doubts as to the validity of [their] assertions." *Wynn*, 75 F. Supp. at 1239. Plaintiff has failed to satisfy the "demanding burden" for pleading actual malice. *Id*. He has therefore failed to state a claim for defamation against Gannett and PNI as to the December 2017 Article.

## C.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure is a liberal standard, stating

---

[9] As Defendants note, "alleging actual malice as to Gannett and PNI specifically is something Plaintiff knows how to do." (Doc. 61 at 10.) With respect to the October 2017 Article, the Second Amended Complaint states, "Defendant Phoenix Newspapers, and Gannett Co. Inc., knew the statement characterized above--that Plaintiff, 'is a … founder of Quepasa, a now-defunct Latino online social-media outlet' was not true because, among other reasons, the *Arizona Republic* itself had previously published numerous articles about Quepasa…" (Doc. 13-1 ¶ 150; Doc. 61 at 10.) This statement indicates that Plaintiff could have made allegations about Defendants' state of mind with respect to the December 2017 Article, but chose not to do so.

that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). In granting a motion to dismiss, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Exceptions to the general policy of granting leave exist "where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court finds that amendment would be futile as to the October 2017 Article, for which the one-year statute of limitations has expired. As to the December 2017 Article, this case has been pending since December 14, 2018, and Plaintiff has already amended the complaint twice. The Court is accordingly concerned that further amendment would produce "undue delay." *Id.* Nonetheless, in light of the considerations above, the Court will permit Plaintiff one final opportunity to amend the complaint.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice (Doc. 61) is **granted**.

**IT IS FURTHER ORDERED** allowing Plaintiff 21 days from the issuance of this Order to file a Third Amended Complaint that conforms with the requirements set forth in this Order. Because the Court is giving Plaintiff leave to amend, the Clerk of the Court shall not enter judgment at this time.

**IT IS FINALLY ORDERED** that the oral argument previously scheduled for April 30, 2020 (Doc. 66) is hereby **vacated.** Upon full consideration of the pending motion, relevant authorities, and related documents, the Court believes that oral argument would not significantly aid the decisional process. See Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

/ /

/ /

Dated this 22nd day of April, 2020.

_Michael T. Liburdi_
Michael T. Liburdi
United States District Judge