**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Peterson,<br><br>    Plaintiff,<br><br>v.<br><br>Gannett Company Incorporated, et al.,<br><br>    Defendants. | No. CV-20-00106-PHX-MTL<br><br>**ORDER** |

Before the Court is the Motion to Dismiss Plaintiff's Third Amended Complaint With Prejudice filed by Defendants Gannett Co., Inc. ("Gannett") and Phoenix Newspapers, Inc. ("PNI"). (Doc. 70.) For the following reasons, Defendants' motion is granted; the Third Amended Complaint is dismissed with prejudice.[1]

**I.    BACKGROUND**

Plaintiff brings claims for defamation and false light under Arizona law. (Doc. 68 at 40, 46.) The Court previously described the relevant factual allegations and procedural history in this case. (Doc. 67 at 1–5.) They need not be repeated here.

In ruling on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, the Court found that the one-year statute of limitations had expired on Plaintiff's defamation claim as to an October 23, 2017 article published by PNI on its

---

[1] Neither party has requested oral argument. Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

website, azcentral.com, and in the *Arizona Republic* newspaper.[2] (*Id*. at 8.) The Court found that, as to his defamation claim regarding a December 14, 2017 article, which also appeared online and in print,[3] Plaintiff was a limited-purpose public figure "with respect to his high-profile business dealings." (Doc. 67 at 10.) He was therefore required to allege "actual malice." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). The Second Amended Complaint did not do so. The Court found that amendment would be futile as to the October 2017 article, but permitted Plaintiff "one final opportunity" to amend the complaint with respect to the December 2017 article. (Doc. 67 at 15.)

Plaintiff has since filed a Third Amended Complaint with new factual allegations regarding the December 2017 article, which is now the only publication at issue. He has also added a new claim for false light under Arizona law. (Doc. 68 at 46.) Defendants have moved to dismiss the Third Amended Complaint with prejudice. The motion is fully briefed. (Docs. 70–72.)

## II.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can

---

[2] The article, by reporter Craig Harris, appeared on azcentral.com with the headline "State Orders Failed Internet Payday Loan Venture to Pay $250K to Defrauded Investors" and in the *Arizona Republic* with the headline "Online Firm Ordered to Repay Investors $250K." (Doc. 61 at 3; Doc. 62-2.)

[3] The article, also by Mr. Harris, appeared on azcentral.com with the headline "Once-High-Flying Quepasa Chief Jeff Peterson Under Fire as $9M Gone in Online Startups" and in the *Arizona Republic* with the headline "$9M Missing After Quepasa Founder's New Startup Fails." (Doc. 61 at 4; Doc. 62-4.)

1  prove no set of facts in support of the claim that would entitle it to relief." *Williamson v.*
2  *Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

3  The Court must accept material allegations in the Complaint as true and construe
4  them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*,
5  720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint
6  have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City*
7  *of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is
8  "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581. "Determining
9  whether a complaint states a plausible claim for relief will . . . be a context-specific task
10 that requires the reviewing court to draw on its judicial experience and common sense."
11 *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

12 **III.   DISCUSSION**

13 This case implicates the protections afforded to freedom of speech by the First
14 Amendment of the United States Constitution. There exists a "profound national
15 commitment to the principle that debate on public issues should be uninhibited, robust, and
16 wide-open." *New York Times Co.*, 376 at 270. Further, constitutional protections for
17 defendants in defamation cases "surely demonstrate the Court's recognition of the
18 Amendment's vital guarantee of free and uninhibited discussion of public issues."
19 *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990). Nonetheless, "[s]ociety has a
20 pervasive and strong interest in preventing and redressing attacks upon reputation."
21 *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966). First Amendment protections must also be
22 balanced with the ability of individual plaintiffs to seek redress for reputational and other
23 damages. *See Palin v. New York Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019).

24 These considerations are heightened in the context of public figures, because a "rule
25 that would impose strict liability on a publisher for false factual assertions would have an
26 undoubted 'chilling' effect on speech relating to public figures that does have constitutional
27 value." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988). Acknowledging these
28 interests, the United States Supreme Court has developed a "a federal rule that prohibits a

public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.*, 376 U.S. at 279–80. This requirement has been extended to limited-purpose public figures. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Here, the Court addresses whether Plaintiff, a limited-purpose public figure, has met his burden to allege actual malice in connection with his defamation and false light claims.

### A. Defamation

A defamation claim generally requires a false publication that brings "the defamed person into disrepute, contempt, or ridicule, or must impeach [the] plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989). When the plaintiff is a "public figure," he or she must also prove (i) the falsity of the statements at issue and (ii) by clear and convincing evidence, that the statements were made with "actual malice." *See New York Times Co.*, 376 U.S. at 279–80; *Gertz*, 418 U.S. at 345. As noted, "actual malice" is "knowledge that it was false or with reckless disregard of whether it was false or not." *Hustler*, 485 U.S. at 52 (citing *New York Times Co.*, 376 U.S. 279–80).[4]

The Court previously found that Plaintiff was a limited-purpose public figure "with respect to his high-profile business dealings." (Doc. 67 at 10.) It cited, as examples, Plaintiff's self-described status as a "well-known technology entrepreneur" who founded the social networking site Quepasa.com, Inc. ("Quepasa"), which became a "national sensation"; Plaintiff's relationships with "significant political and business personalities in both the United States and Mexico"; his appointment as a director of the Arizona-Mexico Commission; and his recruitment of former United States Attorney Dennis Burke and former Nogales Mayor Marco Lopez, Jr. to the board of Mobile, another company he founded. (*Id.*) (citing Doc. 13-1). These assertions remain in the Third Amended

---

[4] As this Court acknowledged in the prior order, the U.S. Supreme Court "has federalized major aspects of libel law." *Gertz*, 418 U.S. at 370 (White, J. dissenting); (Doc. 67 at 9 n.8).

Complaint. (Doc. 68 ¶¶ 11, 13(f), 17, 23, 57, 63.) Plaintiff also does not dispute, in his response to the pending motion to dismiss, that he is a limited-purpose public figure. (Doc. 71 at 2.)

Accordingly, the Court addresses whether Plaintiff has sufficiently alleged that Defendants acted with actual malice. Actual malice is "not measured by whether a reasonably prudent man would have published, or would have investigated before publishing," but by whether "the defendant in fact entertained serious doubts as to the truth of [its] publication." *St. Amant v. Thompson*, 390 U. S. 727, 731 (1968). The existence of actual malice is a question of law. *Milkovich*, 497 U.S. at 17. "[I]t is proper to dismiss a complaint when the Court concludes the plaintiff fails to plead actual malice as a matter of law" under the Rule 12(b)(6) standard. *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2019 WL 281370, at *8 (N.D. Cal. Jan. 22, 2019).

The Court previously found that the Second Amended Complaint's "conclusory allegations" were insufficient to allege that Defendants had acted with actual malice.[5] (Doc. 67 at 14.) Plaintiff has since added five allegations in connection with his defamation claim. (Doc. 68 at 43–46.) Defendants argue that the new allegations are either not defamatory in nature or that Plaintiff has not alleged actual malice. (Doc. 70 at 4–6.) The Court analyzes Plaintiff's allegations in turn.

### 1. $9 Million "Gone"

The article's headline, as it appeared online, was "Once-high-flying Quepasa chief Jeff Peterson under fire as $9M gone in online startups." (Doc. 68-1 at 1.) Plaintiff takes issue with the word "gone." (Doc. 68 at 43.) He states that the article is "false and defamatory" because it "goes on to explain how the money had been spent, and that it

---

[5] The Second Amended Complaint contained two relevant allegations. First, it described the two articles as "intentionally orchestrated by Burke as the group leader, and published by the *Arizona Republic* newspaper and on the azcentral.com website with ill-will and knowledge of falsehood. The Complaint seeks redress for these statements which were made with actual malice." (Doc. 13-1 ¶ 12) (emphasis omitted). Second, "[w]hen [d]efamatory statements were made regarding Peterson, Defendants acted with actual malice." (*Id.* ¶ 203.)

- 5 -

didn't merely vanish." (*Id.*) That the money was "gone," according to Plaintiff, "implies theft." (*Id.*)

As Defendants note, Plaintiff does not allege actual malice with respect to this statement. (Doc. 70 at 6.) Further, "a defamatory meaning must be found, if at all, in a reading of the publication as a whole." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998); *see also Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) ("The context in which the statement appears is paramount in our analysis."). As Plaintiff notes, the text of the article describes how the money was spent. (Doc. 68-1 at 6–8.) Further, on a motion to dismiss a defamation claim, the Court "must interpret the article as it would appear to the average reader to decide whether it can reasonably bear the meaning ascribed to it by plaintiff." *Barger v. Playboy Enterprises, Inc.*, 564 F. Supp. 1151, 1154 (N.D. Cal. 1983), aff'd, 732 F.2d 163 (9th Cir. 1984). The Court finds that the average reader would understand the word "gone" to mean that the money was no longer available, as opposed to that it was stolen. Given that Plaintiff has not alleged that this statement was actually false, he cannot allege that Defendants acted with "knowledge that [this statement] was false or with reckless disregard of whether it was false or not." *Hustler Magazine, Inc.*, 485 U.S. at 52. The article's headline is not actionable.

### 2. "High-School Dropout"

Plaintiff also objects to the article's statement that he was a "high-school dropout." (Doc. 68 at 43.) Plaintiff states that he does not meet the definition of "dropout" as a "person who has abandoned a course of study or who has rejected conventional society to pursue an alternative lifestyle." (*Id.*) Rather, Plaintiff states that he left school with parental permission and later received a Graduate Equivalency Diploma. (*Id.*)

To survive a motion to dismiss, a defamation plaintiff must establish that the publication is "reasonably capable of sustaining a defamatory meaning." *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113, 1121 (C.D. Cal. 1998), aff'd, 210 F.3d 1036, 1038 (9th Cir. 2000). "It is for the court to decide [whether a statement is actionable defamation] in the first instance as a matter of law." *Knievel*, 393 F.3d at 1074 (citation omitted). The

- 6 -

Court finds that the term "high-school dropout" is not defamatory as a matter of law because the "average reader" would understand the term as someone who left high school before graduating. *Barger*, 564 F. Supp. at 1154. Plaintiff does not dispute that this is a true statement. And "[s]ubstantial truth is an absolute defense to a defamation action in Arizona." *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355 (1991).

Plaintiff also argues that Defendants "intentionally omitted the fact that Peterson re-enrolled in a well-respected academic institution, Harvard University, and became a degree candidate there, in his 30's." (Doc. 68 at 43.) But Defendants "had no obligation to present the context [Plaintiff] would have preferred." *Lundin v. Discovery Commc'ns Inc.*, 352 F. Supp. 3d 949, 962 (D. Ariz. 2018), aff'd, 796 F. App'x 942 (9th Cir. 2020); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1108 (10th Cir. 2017) ("The omission of additional favorable information from an otherwise true publication does not render a statement materially false."). For these reasons, this statement is not actionable.

### 3.    Plaintiff "Wanted Guidance"

The article states that, after Plaintiff founded Quepasa, "he wanted guidance on what to do next." (Doc. 68 at 43–44.) Plaintiff argues that this statement is false because he was not "seeking guidance" or "adrift and in need of direction." (*Id.* at 44.) Plaintiff states that Defendants knew that this statement was false because the article later states that a Mesa businessman, Ross Farnsworth Jr., provided $400,000 in capital for Plaintiff's new company, Mobile. Plaintiff asserts that he needed capital, not advice, from Mr. Farnsworth. (*Id.*)

Here, Plaintiff himself notes that the rest of the article provides context for the "guidance" he sought. *See Kaelin*, 162 F.3d at 1040 ("[A] defamatory meaning must be found, if at all, in a reading of the publication as a whole."). Further, as noted, a defamation claim requires a false publication that brings "the defamed person into disrepute, contempt, or ridicule, or must impeach [the] plaintiff's honesty, integrity, virtue, or reputation." *Godbehere*, 162 Ariz. at 341. It is not conceivable that "wanting guidance," even if false,

could bring Plaintiff into disrepute, contempt, or ridicule. As this statement is not "reasonably capable of sustaining a defamatory meaning," it is not actionable. *Cochran*, 58 F.Supp.2d at 1121.

### 4. "Meteoric Crash"

Plaintiff also takes issue with the statement, "And like Quepasa, which ultimately had a meteoric crash, Mobile has essentially busted." (Doc. 68 at 44.) Plaintiff argues that this statement was false and defamatory because Defendants knew that Quepasa did not have a "meteoric crash." He notes that the *Arizona Republic* had followed Quepasa through years in which Plaintiff "held the company together instead of letting it 'crash,' as did many other 'dot-com' companies." (*Id*. at 44.) Plaintiff cites to articles from 2002 and 2006 demonstrating that he previously "saved" and "revitalize[ed]" Quepasa. (*Id*. at 44–45.) He states that Quepasa's ultimate outcome was "dramatically different from how it was portrayed by Defendants" because Quepasa ultimately merged with a company called MeetMe; the "surviving corporation was purchased in March 2020 by NuCom group . . . for $500,000,000." (*Id*. at 45.)

Quepasa is not a party to this lawsuit. To be "actionable as a matter of law, defamatory statements must be published in such a manner that they reasonably relate to specific individuals." *Hansen v. Stoll*, 130 Ariz. 454, 458 (Ct. App. 1981). The burden rests on the plaintiff to show that the publication was "of and concerning" him. *Id*. Here, Plaintiff only objects to Defendants' characterization of Quepasa's financial history. Plaintiff "may not challenge statements, even if untrue and capable of defamatory meaning, on behalf of the institution." *Haswood v. Am. Polygraph Ass'n*, No. CV-14-00253-PHX-GMS, 2015 WL 846420, at *7 (D. Ariz. Feb. 26, 2015).

Further, even if this statement were actionable on Plaintiff's behalf, Defendants' prior articles do not support Plaintiff's assertion that the statement was "written with actual malice." (Doc. 68 at 44.) Plaintiff argues that, based on the present article, Defendants knew that Quepasa was not "roadkill along the information superhighway." (*Id*.) But it is common sense that Quepasa's previous success is irrelevant to whether it ultimately

"crashed." Plaintiff cannot bring a defamation claim based on this statement because it was not "of and concerning" him. *Hansen*, 130 Ariz. at 458. And even if he could, Plaintiff has not alleged actual malice.

### 5. Criminal Defense Attorney

The article also stated, "Peterson has hired Chris Rapp, a Phoenix criminal defense attorney. Rapp declined to comment." (Doc. 68 at 45.) Plaintiff argues that this statement is defamatory because he never hired Mr. Rapp, but instead hired his law partner, Andrew Pacheco, "with whom Plaintiff has a long-standing business relationship." (*Id.*) He states that Defendants acted recklessly "especially in light of the fact that Attorney Rapp wouldn't comment one way or the other." (*Id.*) Plaintiff states that the "implication is clear" that he was a "criminal, who need[ed] a 'criminal attorney,' when in reality," he is a "law-abiding citizen who has never been convicted of a crime in any jurisdiction." (Doc. 68 at 46.)

Despite Plaintiff's argument, his own complaint states that he "retained the law firm of Ryan Rapp & Underwood, lawyers Andrew Pacheco and Chris Rapp, to communicate with Burke." (*Id.* at 29 ¶ 140.) Further, Plaintiff does not dispute that he contracted with Mr. Pacheco, Mr. Rapp's law partner. He also does not dispute that Mr. Rapp is a criminal defense attorney. (Doc. 68 at 51.) A defendant cannot be liable for defamation "for publishing a statement that although not literally true, was substantially true." *Heuisler v. Phoenix Newspapers, Inc.*, 168 Ariz. 278, 285 n.4 (Ct. App. 1991). Further, "[s]light inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Id*. Even if Plaintiff hired Mr. Pacheco, as opposed to Mr. Rapp, the Court finds that the "gist" of the statement was that Plaintiff hired an attorney. As Plaintiff does not allege that this is false, the statement is not defamatory.

\*     \*     \*

Ultimately, in viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has not stated a claim for defamation. A public-figure-defamation plaintiff "must point to details sufficient to render a claim plausible." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (citing *Pippen*

*v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2017)). Although Plaintiff has attempted to point to more details than in his Second Amended Complaint, his allegations fail for the reasons described above. He has failed to state a claim for defamation against Defendants either because the statements are not possibly defamatory or because he has failed to allege actual malice.

### B. False Light

Plaintiff has also alleged, for the first time, a claim for false light against Defendants. (Doc. 68 at 46.) To state a claim for false light under Arizona law, a plaintiff must demonstrate that "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Doe v. Oesterblad*, No. CV–13–01300–PHX–SRB, 2015 WL 12940181, at *5 (D. Ariz. June 9, 2015) (quoting *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015)); *see also* Restatement (Second) of Torts § 652E (Am. Law Inst. 1977). As with defamation, a public official bringing a false light claim must allege actual malice. *See Godbehere*, 162 Ariz. at 342 ("Any doubt about the application of the actual malice element of the false light tort to public figures has been eliminated.").

Plaintiff identifies eight additional statements in connection with his false light claim. (Doc. 68 at 47–51.) He asserts that Defendants "must have entertained serious doubts" about the truth of each one.[6] (*Id.*) Defendants, in turn, argue that Plaintiff's "threadbare allegations" do not plausibly state a claim for relief.

### 1. Investors' Retirement Accounts

The article states, "[w]ith Peterson and other company fundraisers bringing in cash, some Mobile investors parted ways with their individual retirement accounts or 401(k)

---

[6] To the extent that Plaintiff reasserts the statements regarding the $9 million "gone," that he was a "high-school dropout," that he sought guidance, Quepasa's "meteoric crash," and attorney Chris Rapp, those statements also fail as to the false light claim. (Doc. 68 at 47-51 ¶¶ A1, A2, A3, A6, A13.)

- 10 -

funds in hopes of making it big with the latest online business sensation." (Doc. 68 at 48 ¶ A4.) Plaintiff states that the reporter "must have entertained serious doubts concerning the veracity of this claim because it came from a source with an ax to grind, and was not verified by those who allegedly tapped into their 401(k) funds." (*Id*.) Even if that is true, however, "failure to investigate, sloppy investigation, poor reporting practice and the like are not per se actual malice." *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 488 (1986). Plaintiff's allegations do not rise to the level of actual malice. As Plaintiff has not alleged actual malice, this statement is not actionable for false light.

### 2. The Money was "Gone"

The article also states, "[t]oday, however, all the money is gone. By September 2016, [Mobile] had a zero balance, according to Chase Bank records produced for Burke this year by the company's chief financial officer." (Doc. 68 at 48 ¶ A5.) Plaintiff's argument is akin to that relating to the article's headline. Plaintiff argues that Defendants knew that the money was not "'gone,' but that it had been allocated in an earnest attempt to keep a startup afloat." (*Id*.) Plaintiff does not dispute that the money was "gone," as in no longer available, from Mobile's account. Further, as with defamation claims, to qualify as false light invasion of privacy, the publication must give "publicity to information placing *the plaintiff* in a false light." *Oesterblad*, 2015 WL 12940181, at *5 (emphasis added). This assertion relates to Mobile, not to Plaintiff, and is therefore not actionable.

### 3. Immuebles Carso

The article also describes the *Arizona Republic*'s review of Mobile bank records, which indicated that at least $770,759 was paid to a company, Immuebles Carso, controlled by Mexican billionaire Carlos Slim. (Doc. 68 at 49 ¶ A7.) Plaintiff states that "with nothing more than a tip from Defendant Burke, the Defendants must have entertained serious doubt as to the true purpose of the payment to Immuebles Carso." (*Id*.) This statement is wholly speculative. Further, "failure to investigate will not alone support a finding of actual malice." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). This statement is not actionable.

### 4. Emails

The article also quotes an email from Mr. Burke to Plaintiff stating, with respect to Mobile, "[t]he bank statements are what I anticipated—massive spending void of any business sense, with little to none directed to the actual platform and quite a windfall for you, personally." (Doc. 68 at 49 ¶ A8.) Plaintiff states that the "Defendants must have entertained serious doubts as to the authenticity" of the emails because there is no indication that they "were verified by the Internet server which is routine when emails are introduced in Court for evidentiary purposes." (*Id*.) The emails were reviewed for a newspaper article, not for admission in court. And, even if true, "[m]ere negligence is not enough to demonstrate actual malice." *Hoffman v. Capital Cities/ABC, Inc*., 255 F.3d 1180, 1187 (9th Cir. 2001). Plaintiff has not stated a false light claim with respect to this statement.

### 5. Corporate Theft

The article also states, "Burke accused Peterson in his email of corporate theft, noting investors' money was spent at Men's Warehouse, Nordstrom Rack, on designer luggage and at $600-a-night hotels." (Doc. 68 at 50 ¶ A9.) Plaintiff stated that without hearing from him, "or his former corporate officers, the Defendants must have entertained serious doubts that the expenses could not have been a legitimate business expense." (*Id*.) Again, "failure to investigate, sloppy investigation, poor reporting practice and the like are not per se actual malice." *Dombey*, 150 Ariz at 488. This statement is not actionable.

### 6. $150,000 Loan

Plaintiff also cites to the article's statement that "Burke recently told *The Republic* that Mobile also loaned [Mobile president Justin Billingsley] $150,000 that was not repaid." (Doc. 68 at 50 ¶ A10.) Plaintiff argues that "Defendants must have entertained serious doubts as to the truth of this allegation" because it was refuted by an attorney, Don Bivens, who had previously represented Plaintiff. (*Id*.) The article specifically includes Mr. Bivens's response, however. (Doc. 68-1 at 8.) Further, this statement refers to Mobile and Mr. Billingsley, not to Plaintiff, and is therefore not actionable.

### 7. Bankruptcy

The article also states that Plaintiff put Inter123, a company he controlled, into "Chapter 11 bankruptcy protection in Las Vegas after two former attorneys who were owed $158,190 sued him for nonpayment and won court judgments against his company." (Doc. 68 at 50 ¶ A11.) Plaintiff states that "Defendants must have held serious doubts that the debt owed to the lawyers was the motivation for the Chapter 11 filing." (*Id.*) Plaintiff does not dispute that he put Inter123 into Chapter 11 bankruptcy, nor that this occurred after two former attorneys sued the company. (*Id.*) As Plaintiff has not alleged that this statement is false, he cannot allege false light.

### 8. Internal Documents

Lastly, the article states, "[i]nvestors and some board members plan to turn over the various companies' internal documents, including bank records, to law enforcement, the Corporation Commission, Peterson's Las Vegas bankruptcy trustee and the IRS in hopes of bringing additional investigations and forcing investors' repayment, one board member told *The Republic*." (Doc. 68 at 50 ¶ A12.) Plaintiff asserts that "Defendants had to have entertained serious doubt about the Plaintiff's alleged criminal conduct because for every allegation made by Defendant Burke and others, there existed a reasonable alternative explanation." (*Id.*) Again, a failure to investigate these purported "reasonable alternative explanations" is not actual malice. *Dombey*, 150 Ariz. at 488. This statement is not actionable.[7]

\*   \*   \*

The Court concludes that Plaintiff has failed to state a claim of false light. *See Hunley v. Orbital Scis. Corp.*, No. CV-05-1879-PHXDGC, 2007 WL 977384, at *2 (D. Ariz. Mar. 29, 2007) (dismissing false light claim for failure to allege falsity and because

---

[7] A statement that expresses "an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts" generally is not actionable. *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) (citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). It appears that this statement is conjecture about forward-looking statements and is therefore not actionable. Because the parties did not raise this argument, the Court will not further analyze it.

- 13 -

the statements amounted to no more than "trivial indignities"). A court "typically will infer actual malice from objective facts. These facts should provide evidence of negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice." *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1085 (9th Cir. 2002). Here, Plaintiff has not alleged actual malice to support a false light claim because the facts on which he relies are either wholly speculative or are, by Plaintiff's own admission, not false statements. Plaintiff has failed to state a claim for false light.

### C.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Exceptions to the general policy of granting leave exist "where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Here, the Court finds that amendment would both produce an undue delay and would be futile.

As to undue delay, this case has been pending since December 14, 2018.[8] (Doc. 1.) Plaintiff has already amended the complaint three times. The Court previously noted that Plaintiff would have "one final opportunity to amend the complaint." (Doc. 67 at 15.) Also, relevant to the "delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Here, Plaintiff's remaining allegations all relate to a December 2017 article. There is no conceivable reason that Plaintiff would know additional facts or theories to raise in a Fourth Amended Complaint that he has not raised in the first four filings. Relatedly, given Plaintiff's opportunities to amend the complaint, the Court finds that further amendment would be futile. The Third Amended Complaint will be dismissed with prejudice.

---

[8] The case was transferred to this District on January 14, 2020. (Doc. 53.)

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint With Prejudice (Doc. 70) is **granted**. The Third Amended Complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this case and enter judgment accordingly.

Dated this 29th day of December, 2020.

Michael T. Liburdi
United States District Judge